UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH A. LOCKETT,                                    Case No. 11-13709

        Plaintiff,                              Nancy G. Edmunds
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 19)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On August 25, 2011, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G.

Edmunds referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance and supplemental security income benefits.  (Dkt. 2).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 16, 19).

    B.   Administrative Proceedings

Plaintiff filed the instant claims on May 3, 2007, alleging that she became

unable to work on July 24, 2006.  (Dkt. 12-5, Pg ID 150-151).  The claim was

initially disapproved by the Commissioner on August 31, 2007.  (Dkt. 12-4, Pg ID

125-128).  Plaintiff requested a hearing and on September 21, 2009, plaintiff

appeared with counsel before Administrative Law Judge (ALJ) Patricia S. McKay,

who considered the case *de novo*.  In a decision dated December 17, 2009, the ALJ

found that plaintiff was not disabled.  (Dkt. 12-2, Pg ID 41-54).  Plaintiff

requested a review of this decision on February 10, 2010.  (Dkt. 12-2, Pg ID 39-

40).  The ALJ's decision became the final decision of the Commissioner when,

after the review of additional exhibits[1] (Dkt.12-2, Pg ID 33-34), the Appeals

Council, on June 24, 2011, denied plaintiff's request for review.  (Dkt. 12-2, Pg ID

30-32); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 49 years of age at the time of the most recent administrative

---

[1] In this circuit, where the Appeals Council considers additional evidence
but denies a request to review the ALJ's decision, since it has been held that the
record is closed at the administrative law judge level, those "AC" exhibits
submitted to the Appeals Council are not part of the record for purposes of judicial
review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r
of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court
review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence
presented to the ALJ. In other words, Appeals Council evidence may not be
considered for the purpose of substantial evidence review.

hearing.  (Dkt. 12-2, Pg ID 66).  Plaintiff's relevant work history included

approximately 12 years as a street maintenance helper, cook/cashier/baker's helper

and salad maker.  (Dkt. 12-6, Pg ID 194).  In denying plaintiff's claims, defendant

Commissioner considered a back and leg injury (nerve damage) as possible bases

of disability.  (Dkt. 12-6, Pg ID 179).

　　　The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

July 24, 2006.  (Dkt. 12-2, Pg ID 48).  At step two, the ALJ found that plaintiff's

mild degenerative disc disease, mild facet arthritis of the sacroilliac, lumbar

radiculopathy/sciatica, and history of tarsal tunnel syndrome were "severe" within

the meaning of the second sequential step.  (Dkt. 12-2, Pg ID 49).  At step three,

the ALJ found no evidence that plaintiff's combination of impairments met or

equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that

plaintiff could not perform her previous work as a cook/cashier/baker's helper and

salad maker .  (Dkt. 12-2, Pg ID 52).  At step five, the ALJ denied plaintiff

benefits because plaintiff could perform a significant number of jobs available in

the national economy.  (Dkt. 12-2, Pg ID 52-53).

　　　B.　　Plaintiff's Claims of Error

　　　According to the plaintiff, the ALJ failed to adequately explain the finding

of a "light" residual functional capacity in light of the clear impairment that

plaintiff had in the ability to stand or walk more than a minimal amount of time.

Plaintiff argues that the ALJ does not account for her inability to stand and walk;

her ability to stand and walk is compromised by the tarsal tunnel syndrome and

degenerative conditions in her spine, which affected the ability to utilize her legs.

The consultative examiner, E. Montasir, MD, indicated that plaintiff was unable to

"stoop, carry, or push."  According to plaintiff, there are indications that she had

severe restrictions, including positive EMG tests and objective testing.  The VE

indicated that if plaintiff's testimony was given full credibility, she would be

precluded from employment within the employment of the five part test set forth at

SSR 83-10.

Plaintiff also points out that the ALJ acknowledged her lack of insurance as

the reason for her lack of medical treatment.  Yet, the ALJ also indicated that the

lack of medical treatment negatively impacted her credibility as to her claim of

debilitating pain.  Plaintiff argues that she indicated a willingness to submit to an

additional consultative examination, which was not deemed necessary by the ALJ

despite the greater than two year period between the previous consultation and the

hearing.  Plaintiff contends that such an examination would further support her

diminished physical capacity meriting a finding of disability as of November 14,

2009.

According to plaintiff, there is legal support for a finding that a sit/stand

option eliminates even "sedentary" employment.  In *Wages v. Secretary of HHS*, 755 F.2d 495 (6th Cir. 1985), the Sixth Circuit held that a claimant who cannot sit or stand for prolonged periods of time, but must alternate between sitting and standing as required for comfort, is not capable of performing "sedentary" work as defined by C.F.R. section 404.15657(a).  According to plaintiff, there is clear evidence to support the contention of her inability to stand or walk at a level to support a finding of a "light" residual functional capacity based on her hearing testimony that she requires the assistance of a friend due to problems with frequent falls.  According to plaintiff's testimony, she has difficulties placing any weight on the left leg.  Plaintiff also points to her testimony that a sciatica nerve root condition placed additional restrictions on her.  Plaintiff also testified that her medications caused her to be sleepy.  Plaintiff also testified that she could not "stand or lift" and that her ankle was swollen at the time of the hearing.  Plaintiff argues that the ALJ failed to discuss plaintiff's capacities to stand or lift in an eight hour day.  According to plaintiff, because she did not have health insurance or the financial means to obtain medical coverage, she was not able to obtain a medical source statement from the treating physicians as she had no primary treating physician.

C.    The Commissioner's Motion for Summary Judgment

The Commissioner urges the Court to reject plaintiff's argument that she

could not perform light level work because she is unable to stand or walk.
According to the Commissioner, plaintiff presents no objective or clinical
evidence to show that she cannot walk or stand.  Rather, all of the medical opinion
evidence and clinical findings overwhelmingly support the ALJ's RFC finding.
As to objective testing, the ALJ noted that in August 2006, a nerve conduction
study was completely normal, as was an x-ray of the lumbar spine.  (Tr. 21, 213,
216).  The ALJ also noted that a lumbar x-ray taken in January 2007 showed only
"mild degenerative changes at L5."  (Tr. 21, 200).  According to the
Commissioner, the record lacks any other relevant objective test results.  As to
clinical findings, the ALJ noted that at the neurological consultation with Dr.
Kenneth Casey in January 2007, palpitation of the cervical, thoracic and lumbar
spine were unremarkable; lateral bending and rotation were intact; and there were
no pain complaints on range of motion of the lumbar spine.  (Tr. 21, 194 ).  The
ALJ also noted that straight leg raising was unremarkable bilaterally, and strength
and sensation were full and intact in both the upper and lower extremities.  (Tr. 21,
194).  According to the Commissioner, the ALJ also properly noted that
emergency room visits were relatively infrequent and sporadic in nature, and
often, for non-impairment related issues.  (Tr. 22).  In fact, the ALJ correctly noted
that in the three years between January 2007, when plaintiff lost her insurance, and
December 2009, there were only four ER visits for sciatic-type pain.  (Tr. 22).

And, the ALJ pointed out that at the medical evaluation performed for litigation

purposes in October 2007, the only abnormalities noted were mild tenderness on

palpitation of the back, an antalgic gait, mild atrophy of the left leg, and a

discrepancy between sitting and supine straight leg raising on the left.  (Tr. 22,

295).  Further, plaintiff had full muscle strength, normal muscle tone, normal

range of motion in both of her knees and ankles, and no swelling or effusion.  (Tr.

295- 296).  Dr. McDade wrote that, aside from some mild left leg atrophy, there

were no other objective findings for plaintiff's leg pain.  (Tr. 296-297).  Moreover,

Dr. McDade noted that "Waddell reliability tests (4 out of 5) were positive and

reported sensory deficit were not consistent with her clinical history."  (Tr.

296-297).  The Commissioner contends that the absence of neurological deficits or

any significant atrophy supports the ALJ's finding that plaintiff was not disabled.

*See Crouch v. Sec'y of H.H.S.*, 909 F.2d 852, 856-57 (6th Cir. 1990) ("We find

that the absence of any significant neurological deficits and atrophy supports the

Secretary's conclusion . . . .").  Most notably, the Commissioner points out that

neither Dr. Casey nor Dr. McDade, opined that plaintiff had any functional

limitations.  And, neither of their consultative evaluations contained any medical

opinions regarding work restrictions.  The Commissioner maintains that because

no doctor ever opined that plaintiff was disabled, or had any functional limitations

that were more restrictive that the ALJ's RFC determination, substantial evidence

Report and Recommendation
Cross-Motions for Summary Judgment
*Lockett v. Comm'r*; Case No. 11-13709

supports the ALJ's finding that plaintiff was not disabled.  Rather, the only medical opinion evidence of record was that of the state agency reviewing physician, Dr. Mahmood.  (Tr. 242-249).  The Commissioner asserts that the ALJ properly relied on the assessment of Dr. Mahmood, who opined that plaintiff was capable of medium level work and occasional postural activities.  (Tr. 242-249).  Accordingly, the ALJ adopted Dr. Mahmood's recommendation that plaintiff perform work requiring only occasional climbing of stairs, crouching, crawling, kneeling, and stooping/bending.  (Tr. 20, 244).  However, giving plaintiff the "considerable benefit of the doubt with regard to her testimony," the ALJ restricted plaintiff to light work (rather than medium), precluded the climbing of ladders, and limited her to only occasional use of the left lower extremity for foot controls.  (Tr. 20, 242-249).  Based on a medical record that showed that plaintiff's impairments were mild at worst, the Commissioner urges the Court to conclude that it was reasonable for the ALJ to rely on the state agency physicians in finding plaintiff not disabled.

The only evidence that plaintiff points to in support of her argument that she could not stand or walk is her own testimony.  However, the ALJ properly found that plaintiff's allegations of disabling pain were "not considered fully credible" (Tr. 22).  According to the Commissioner, plaintiff does not challenge the ALJ's credibility determination and has waived her right to do so.  (Tr. 22).  *See Hollon*

*ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").  As discussed by the ALJ, plaintiff was not fully credible, in part because "given [her] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions," placed on plaintiff by a doctor, or objective evidence that revealed more than minimal abnormalities.  (Tr. 22).  However, in the absence of any such restrictions, The Commissioner argues that the ALJ reasonably found plaintiff to be less than fully credible.  (Tr. 22).  Moreover, plaintiff's ability to perform a wide variety of daily activities – from cooking, to cleaning, to maintaining hygiene and personal grooming, to running a "jitney" driving service for paying clients in need of a ride – greatly undermined her claims of disability.  (Tr. 19,153-157, 291-292).  Accordingly, the ALJ properly found that plaintiff was not disabled.

Plaintiff argues that her attorney "noted a willingness to submit to an additional Consultative Examination which was not deemed necessary by the ALJ."  (Plaintiff's Br. 6-7; see Tr. 71-72).  According to the Commissioner, to the extent that plaintiff alleges that the ALJ committed reversible error for choosing not to order an additional consultative exam, this argument is without merit.  The determination to order a consultative examination or diagnostic testing is entirely discretionary and is done only when an ALJ determines there is not enough

evidence to evaluate the claim. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary"); *see also* HALLEX §§ I-2-5-14, I-3-7-11 (ALJ has the discretion, not obligation, to order a consultative evaluation ). Thus, the Commissioner contends that the ALJ properly denied counsel's request for additional testing. At the hearing, the ALJ stated that she would order additional testing if she decided it was necessary. (Tr. 71-72). However, the ALJ had a full medical record to help her adjudicate plaintiff's disability claim and also had the benefit of plaintiff's lengthy testimony. (Tr. 36-62). Moreover, the medical record already contained two consultative examinations, one that had been ordered by the state agency and one that plaintiff procured at her attorney's behest. (Tr. 243-241, 285-298). Finally, plaintiff's medical records were examined by a state agency reviewing physician who had sufficient information to recommend functional limitations based on plaintiff's allegations of back and leg pain, and did not signal a need for any additional evidence. (Tr. 242-249). Thus, the Commissioner asserts that it was entirely reasonable for the ALJ not to order an additional consultation at taxpayer expense. *Landsaw v. Sec'y of H.H.S.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain

Report and Recommendation
Cross-Motions for Summary Judgment
*Lockett v. Comm'r*; Case No. 11-13709

sufficient evidence to make a determination.").

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.
McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,
387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to
evaluate the credibility of witnesses, including that of the claimant." *Rogers v.
Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.
Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a
claimant's subjective complaints and may ... consider the credibility of a claimant
when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502
F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the
claimant are to be given great weight, particularly since the ALJ is charged with
observing the claimant's demeanor and credibility.") (quotation marks omitted);
*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is
appropriate where an ALJ finds contradictions among medical reports, claimant's
testimony, and other evidence."). "However, the ALJ is not free to make
credibility determinations based solely upon an 'intangible or intuitive notion
about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec.
Rul. 96-7p, 1996 WL 374186, *4.

 If supported by substantial evidence, the Commissioner's findings of fact
are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the
Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in
substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Report and Recommendation
Cross-Motions for Summary Judgment
*Lockett v. Comm'r*; Case No. 11-13709

C.    Analysis and Conclusions

Plaintiff's primary objection to the ALJ's analysis relates to the credibility findings.  Specifically, plaintiff argues that the ALJ improperly failed to fully credit her testimony based on lack of treatment when plaintiff testified that she was unable to obtain treatment based on a lack of insurance.  Plaintiff testified that her insurance was cancelled in January 2007, just before she was supposed to obtain and MRI and start physical therapy.  Although, according to application for SSI from October, 2007, her "insurance payments ran out in 9/07."  (Tr. 130).  On her disability report for the appeal of denial of benefits, she reports additional limitations as of June, 2007.  (Tr. 173).  She also indicated that her "insurance does not allow me to get the type of treatment i need to recover and return to work. It doesn't pay for certain tests, like mri's, or pay for physical therapy."  (Tr. 177). Although this report is undated, plaintiff filed her appeal in early 2010.  (Tr. 182). Plaintiff previously had an MRI and other diagnostic imaging done 2006, so it is not entirely clear whether her insurance would not cover another MRI or whether she could not get the second MRI completed before the insurance was cancelled. (Tr. 184-187).  Plaintiff was evaluated in January, 2007 by Dr. Kenneth Casey, who recommended an MRI and physical therapy.  (Tr. 191-192).  It is not clear whether Dr. Casey reviewed the 2006 MRI, which does not appear to be in the transcript.  It is also not clear precisely when (or if) plaintiff's insurance expired,

given her contradictory statements.

In any event, it is also well-established that the ALJ may discount such testimony and such credibility determinations are entitled to great weight and deference. *Headla v. Astrue*, 2012 WL 1441342, *11 (E.D. Mich. 2012), citing *Rice v. Astrue*, 2012 WL 95433 (S.D. Ohio 2012) (finding that claimant's lack of medical treatment inconsistent with allegations of disabling pain even where claimant testified that lack of treatment was due to financial constraints); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (ALJ's credibility determination should be accorded great weight and deference).  Moreover, while the ability to afford treatment is a factor used in determining a claimant's credibility, it is not the only factor to be considered.  *McClanahan v. Astrue*, 2009 WL 1684488, *6 (M.D. Tenn. 2009) (While the ALJ found uninsured plaintiff not credible based in large part on lack of treatment, finding upheld where ALJ expressly considered a variety of other factors in evaluating credibility of the plaintiff.).

In this case, the ALJ considered several other factors pertaining to plaintiff's credibility, including plaintiff's failure to provide convincing details regarding the factors precipitating her allegedly disabling symptoms.  That is, she claims her symptoms are present 24/7 and on a "good day" her pain is a 6 or 7 out of 10, which she only has about 3 good days per month.  The ALJ found these

claims to be wholly unsupported by the medical evidence in the record. The objective medical findings only showed mild degenerative changes of the lumbar spine along with mild facet arthritis of the sacroiliac as of January 17, 2007. In addition, plaintiff's electrodiagnostic testing from August, 2006 was normal, with no evidence of radiculopathy despite several references to plaintiff having at least mild radiculopathy.

The ALJ also pointed out that the clinical findings were "equally unremarkable." In January 2007, the neurological examination with Dr. Kenneth Casey revealed palpitation of the cervical, thoracic and lumbar spine to be unremarkable; lateral bending and rotation were intact and there were no pain complaints on range of motion of the lumbar spine; straight leg raising was also unremarkable bilaterally; and strength and sensation were full and intact in both the upper and lower extremities. Dr. Casey's impression was that of mild radiculopathy likely secondary to facet arthropathy and/or local spondylosis. The ALJ acknowledged that while "financial and insurance issues likely contribute[d] to the lack of consistent medical care," plaintiff previously sought care at free medical clinics. At the hearing, she claimed that the clinic said they could not do anything more for her, so she went to the emergency room frequently to obtain injections and get pain medications. The ALJ pointed out, however, that she visited the emergency room twice in 2007, once in 2008, and once in 2009 for

Report and Recommendation
Cross-Motions for Summary Judgment
*Lockett v. Comm'r*; Case No. 11-13709

pain related issues.  Further, the independent medical examination performed for litigation purposes concluded that her examination and history was suggestive of left S1 radiculopathy, but "no other objective findings for this specific condition were obtained" and the "reported sensory deficits were not consistent with her clinical history."  The ALJ also observed that no treating physician placed any physical restrictions on her and none opined as to any functional limitations. Despite his conclusion that plaintiff was only partially credible, the ALJ incorporated lower extremity postural limitations into her RFC.

Based on the foregoing, the undersigned concludes that the ALJ's credibility findings were based on several significant factors other than plaintiff's failure to obtain regular treatment and thus, they are entitled to deference.  The undersigned finds no basis to disturb the ALJ's credibility findings.  Given that there is no basis to disturb the ALJ's credibility findings, plaintiff's related claim of error – that the ALJ failed to take into account her inability to stand and walk – is equally without merit, as this claim was based almost entirely on plaintiff's own testimony, rather than on any supporting medical evidence.

Plaintiff also claims that the ALJ erred as a matter of law by finding that she could perform a limited range of light work despite her need for a sit/stand option, citing *Wages v. Sec'y of Health & Hum. Serv.*, 755 F.2d 495 (6th Cir. 1985). *Wages* is inapplicable to the present case.  In *Wages*, the ALJ relied on the grid,

not a vocational expert, in deciding the RFC.  As observed in *Bennett v. Astrue*, 2008 WL 345523, *5 (W.D. Ky. 2008), *Wages* was inapplicable to case where the ALJ's identification of jobs was premised on vocational expert testimony "that was tailored to the plaintiff's actual exertional and nonexertional limitations."  In this case, the vocational expert testified that approximately half the jobs she identified, based on the ALJ's hypothetical question, allowed for a sit/stand option.  (Tr. at 68).  Thus, this case is like *Bennett* and unlike *Wages*, given that the ALJ relied on the vocational expert testimony tailored to plaintiff's specific limitations.

Plaintiff also contends that the ALJ improperly rejected the consulting examiner's conclusion that she could not stoop, carry, or push.  (Tr. 237).  The ALJ found that plaintiff could perform a limited range of light work with occasional climbing of stairs, crouching, crawling, kneeling, stooping/bending; no climbing of ladders; and with the occasional use of the left lower extremity for foot controls.  (Tr. 20).  However, the physician who completed the functional capacity assessment concluded that plaintiff could essentially perform medium work.  (Tr. 242-249).  Plaintiff does not explain why the ALJ's decision that she could perform a limited range of light work is unsupported by substantial evidence, other than it was not consistent with a limited portion of the consulting examiner's report.  Moreover, state agency medical consultants are highly

qualified physicians who are also experts in the evaluation of the medical issues in disability claims under the Act.  20 C.F.R. § 404.1527(f); SSR 96-6p.  The opinions of state agency physicians are entitled to consideration under the same regulations used to assess other medical opinions and "may be entitled to greater weight than the opinions of treating or examining sources."  20 C.F.R. § 404.1527(f), SSR 96-6p; *see also Mullins v. Sec'y of Health & Human Servs*., 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings.").  And, given that plaintiff's own medical examiner hired for litigation purposes, Dr. McDade, did not impose any physical restrictions on plaintiff whatsoever or opine about any functional limitations, the undersigned concludes that the ALJ's decision to partially credit plaintiff's testimony and conclude that she could only perform a limited range of light work (as opposed to medium work as set forth in the FCA) is supported by substantial evidence in the record.

The undersigned also finds no merit in plaintiff's argument that the ALJ was required to order an additional consultative examination.  The determination whether additional evidence is necessary is within the ALJ's discretion.  *Ferguson v. Comm'r of Social Security*, 628 F.3d 269, 275 (6th Cir. 2010).  And, if the record is sufficiently complete as to allow the ALJ to make a disability

determination, she has no duty to order supplemental medical evidence. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). Plaintiff has provided no basis to conclude that the ALJ was required to order yet another consultative examination in this case, particularly given that one was already done, and plaintiff offered an independent medical examination as well. Plaintiff's claim that there was too much time between the consultative examination and the hearing is supported by little more than the passage of time. Under the circumstances, plaintiff has shown neither that the ALJ improperly exercised her discretion in declining to order another consultative examination nor explained how the record provided an insufficient basis on which the ALJ could make a decision.

    D.   <u>Conclusion</u>

    After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 1, 2012                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

## CERTIFICATE OF SERVICE

 I certify that on August 1, 2012, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Steven V. Harthorn, Andrew J. Lievense, AUSA, and
the Commissioner of Social Security.

                                        s/Darlene Chubb
                                        Judicial Assistant
                                        (810) 341-7850
                                        darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Lockett v. Comm'r*; Case No. 11-13709